IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No. 4:21-CR-00041-M
Case No. 4:24-CV-00109-M

| | |
|---|---|
| TERRY KENDELL GEORGE, JR., | ) |
| | ) |
| Petitioner, | ) |
| v. | ) ORDER |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

This matter comes before the court on the United States' Motion to Dismiss Petitioner's Section 2255 Petition to vacate, set aside, or correct his sentence (the "Petition") [DE 126]. The court finds that the Petition, the United States' Motion, and the record in this case conclusively show that Petitioner is entitled to no relief; therefore, no hearing is necessary pursuant to 28 U.S.C. § 2255(b). For the reasons that follow, the United States' Motion to Dismiss is granted and the Petition [DE 121] is denied.

I. **Background and Procedural History**

A grand jury indicted Petitioner for possessing a firearm and ammunition as a felon. DE 22 at 1 (Superseding Indictment). One night in August 2020, a convenience store clerk approached a police officer to inform him "that four black males had stolen drinks and snacks, and that they had left" the convenience store parking lot "in a white Chevrolet Tahoe." *United States v. George*, 95 F.4th 200, 202 (4th Cir. 2024). Shortly thereafter, law enforcement conducted a traffic stop of the Tahoe, and the only occupants were Petitioner (in the front passenger seat) and his cousin (in the driver seat). *Id.* Law enforcement located "a loaded magazine" on the seat of the vehicle

where Petitioner was sitting and "a Taurus handgun wedged between" that same seat "and the B pillar of the vehicle." *Id.* at 202–03. The handgun was accessible from the front passenger seat where Petitioner was found, but it was "possible" that a back seat passenger could have dropped the firearm into the same space. *Id.* at 203. Petitioner "denied knowledge or ownership of the firearm" and entered a plea of not guilty. *Id.*; *see also* DE 34 (Minute Entry).

Petitioner's cousin, the driver of the Tahoe, "was the Government's key witness," but he also "changed his story" in the weeks leading up to trial. *Id.* In an early interview, the cousin told law enforcement "that two other people, Kate (Last Name Unknown) and an unnamed male, had been riding in the back seat prior to the stop, but he had dropped them off after leaving the convenience store." *Id.* The Government provided that interview report to Petitioner and his counsel prior to trial. *Id.* Then, two weeks before trial, the cousin offered "a different account of who was in the Tahoe prior to the traffic stop," telling law enforcement "that the back seat passengers had been Brody George and Chris (Last Name Unknown)," who were his and Petitioner's cousins. *Id.* The Government failed to disclose to Petitioner that the cousin "had changed his story." *Id.*

At trial, the cousin testified that "Brody and Chris had been the back seat passengers," which shocked Petitioner because "it was at odds" with the story contained in the interview report that the Government had turned over to Petitioner pretrial. *Id.* at 204. The cousin also testified that he had seen Petitioner possess the firearm a couple days prior to the traffic stop, and that he did not know who had put the magazine on Petitioner's seat. *Id.* On cross-examination, Petitioner's counsel "thoroughly impeach[ed]" the cousin's "credibility." *Id.* at 204-05. After the Government rested its case, Petitioner then called one witness, a law enforcement officer who

2

confirmed that the cousin had changed his story about the backseat passengers (and named Brodie and Chris as those passengers) shortly before trial. *Id.* at 205.

"Even though [Petitioner] faced only a single count indictment for being a felon in possession of a firearm and ammunition, the jury was given a special interrogatory to determine [his] guilt on (1) possession of a firearm and (2) possession of ammunition, as both are means of committing the same offense. The jury found [Petitioner] guilty of both means of committing the offense of being a felon in possession." *Id.* at 206.

After the guilty verdict, Petitioner moved for a mistrial or a new trial based on the Government's failure to turn over exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). DE 76. Petitioner argued that the Government violated *Brady* because it failed to disclose that the cousin had changed his story regarding the identities of the backseat passengers. *George*, 95 F.4th at 206. The Government opposed Petitioner's request and "argued that there was no *Brady* violation because the evidence not disclosed was not material in that [Petitioner] already possessed the information and [he] was able to cross examine" the cousin and law enforcement officer "about the information." *Id.* at 207.

This court denied Petitioner's motion for three reasons: (1) the inconsistent statement was not material because Petitioner "knew the identities of the backseat passengers," (2) the Government "disclosed the inconsistent statement" during the cousin's testimony, which allowed Petitioner "to make effective use of the information at trial," and (3) the jury had enough evidence to convict" Petitioner without the cousin's testimony. DE 86 at 7. The court then sentenced Petitioner to 33 months in custody followed by 3 years of supervised release. DE 96.

Petitioner filed a direct appeal, and the Fourth Circuit affirmed his conviction. DE 98; DE 114. Specifically, the Fourth Circuit concluded that the cousin's inconsistent statement was not

3

material because Petitioner was able to thoroughly impeach the cousin's credibility with that statement and through other means, and so therefore "an earlier disclosure" would not have "materially altered the course of the trial." *George*, 95 F.4th at 210–11. But "[m]ore fundamentally," the Fourth Circuit separately held that the inconsistent statement was not material because Petitioner's "conviction would stand independently of any question about [the cousin's] credibility"; "the jury found [Petitioner] guilty of possessing the firearm *and* possessing the ammunition," and the cousin's testimony "was not relevant to the ammunition possession." *Id.* at 211 (emphasis in original). In other words, because the evidence showed that Petitioner "was actually *sitting* on the loaded magazine," "the jury was able to reasonably conclude that [Petitioner] knew he was sitting on the magazine and thereby possessed it," and "the failure to disclose the inconsistent statement does not undermine the verdict." *Id.* (emphasis in original)

After the Fourth Circuit affirmed Petitioner's conviction, he filed the Petition. DE 121. In the Petition, he raises five claims: (1) ineffective assistance of counsel based on his counsel's failure to obtain video evidence which supposedly would show someone "other than the Petitioner [] riding in the front seat" when the Tahoe left the convenience store, (2) prosecutorial misconduct based on the allegation that a law enforcement officer watched the surveillance footage and then "told [the convenience store] to dispose of the tape," (3) ineffective assistance of counsel based on his counsel's failure to object to a *Napue* violation, (4) ineffective assistance of counsel based on counsel's failure to challenge the cousin's testimony that he, Petitioner, Chris, and Brodie were related, and (5) a *Napue* violation when the Government failed to correct the cousin's testimony concerning his prior identifications of backseat passengers. *Id.* at 4-8, 20-23. The United States moved to dismiss the Petition, and Petitioner failed to respond. DE 126; *see also* DE 128 (Rule 12 letter).

4

Since filing the Petition, Petitioner has been released from custody. DE 125. Notwithstanding his release, the court finds that the Petition has not been rendered moot because the "'possibility of consequences collateral to the imposition of sentence is sufficiently substantial to justify [] dealing with the merits.'" *Plymail v. Mirandy*, 8 F.4th 308, 315 (4th Cir. 2021) (quoting *Pollard v. United States*, 352 U.S. 354, 358 (1957)). Accordingly, this matter is ready for decision.

## II. Governing Law

Section 2255 provides that habeas relief should be awarded when:

> the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.

28 U.S.C. § 2255(b). Once the petitioner has made this showing, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010) (quoting § 2255(b)).

The Government may respond to a Section 2255 petition by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *United States v. Reckmeyer*, 900 F.2d 257, 1990 WL 41044, at *4 (4th Cir. Apr. 2, 1990) ("a district court may properly consider a Rule 12(b)(6) challenge to the legal sufficiency of a § 2255 petition"). In such proceedings, "the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss." *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009). However, the scope of a court's review for a motion to dismiss a habeas petition is broader than the typical civil context because the court may also consider the record from the petitioner's underlying conviction and any exhibits attached to the petition. *See id.* at 139; *McCollough v.*

5

*Bragg*, No. 5:20-CV-138, 2021 WL 236079, at *3 (D.S.C. Jan. 25, 2021); 28 U.S.C. § 2255(b) (instructing court to review "the files and records of the case").

## III. Analysis

Each of Petitioner's claims fail because they represent an impermissible attempt to relitigate matters that were decided on direct appeal. "[I]t is well settled" in the federal courts of appeal that a habeas petitioner "cannot circumvent a proper ruling on direct appeal by re-raising the same challenge in a § 2255 motion." *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (cleaned up); *see also United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009); *accord Sun Bear v. United States*, 644 F.3d 700, 702 (8th Cir. 2011); *Yick Man Mui v. United States*, 614 F.3d 50, 55 (2d Cir. 2010); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004); *DuPont v. United States*, 76 F.3d 108, 111 (6th Cir. 1996); *see also Foster v. Chatman*, 578 U.S. 488, 519 (2016) (Alito, J., concurring in the judgment) (explaining that "federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal"); *Reed v. Farley*, 512 U.S. 339, 358 (1994) (Scalia, J., concurring in the judgment) (noting that "claims will ordinarily not be entertained under § 2255 that have already been rejected on direct review").

As the United States correctly observes, Petitioner's claims represent, in one form or another, arguments that "his counsel or the government erred or engaged in misconduct in connection with evidence regarding who was in the backseat of the SUV prior to the traffic stop, and therefore who possessed the *gun*." DE 127 at 12 (emphasis added). But under the law of the case doctrine, Petitioner cannot show that he was prejudiced by any ineffective assistance of counsel or prosecutorial misconduct related to that topic. *See United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999). The Fourth Circuit already held on direct appeal that evidence regarding who was in the backseat of the vehicle (and, therefore, who might have placed the firearm next to

6

the front passenger seat) was not material to Petitioner's conviction because Petitioner was sitting on the firearm magazine during the traffic stop and convicted of possessing ammunition as a felon. *George*, 95 F.4th at 211.

For example, Petitioner's first two claims concern surveillance footage from the convenience store. DE 121 at 4-5. Petitioner claims that this footage would have had evidentiary value in his trial because it would have showed that "someone else had been riding in the front seat." *Id.* at 14. But even accepting Petitioner's description of events as true, it is immaterial that someone else may have been riding in the front seat earlier in the evening; during the traffic stop Petitioner "was actually *sitting* [in the front seat] on the loaded magazine, thereby knowingly possessing it." *George*, 95 F.4th at 211. Therefore, Petitioner cannot show he suffered prejudice by his counsel's failure to obtain the surveillance footage or law enforcement's alleged instruction to convenience store to dispose of that footage. *Strickland v. Washington*, 466 U.S. 668, 691–92 (1984); *United States v. Caro*, 597 F.3d 608, 624–25 (4th Cir. 2010).

Likewise, Petitioner's third and fifth claims concern an alleged *Napue* violation: that the Government violated *Napue* by failing to correct testimony from the cousin that he had never identified anyone other than Brodie and Chris as the backseat passengers, and that his counsel rendered ineffective assistance of counsel by failing to object to this *Napue* violation. DE 121 at 18. But like with *Brady*, "[t]o establish a *Napue* violation, a defendant must show that . . . the false testimony 'may have had an effect on the outcome of the trial.'" *Glossip v. Oklahoma*, 145 S. Ct. 612, 626 (2025) (quoting *Napue v. People of State of Ill.*, 360 U.S. 264, 272 (1959)). Petitioner cannot meet *Napue's* materiality standard here because any false testimony about the backseat passengers "was not relevant to" the jury verdict for "ammunition possession" and therefore would

7

not have had any effect on the outcome of the trial. *George*, 95 F.4th at 211; *Napue*, 360 U.S. at 272. Because Petitioner's *Napue* claim fails, so too does his related *Strickland* claim.

Lastly, Petitioner claims that he received ineffective assistance of counsel when his counsel failed to object to the cousin's testimony that he, Petitioner, Brodie, and Chris were related. DE 121 at 19. But even if his counsel had objected to this testimony, and the jury disregarded it, his conviction would still stand because that testimony was irrelevant to his possession of ammunition. *See George*, 95 F.4th at 211. Therefore, Petitioner again cannot show prejudice under *Brady*.

In sum, on direct appeal the Fourth Circuit concluded that the evidence of law enforcement encountering Petitioner while he was sitting on a magazine during the traffic stop was "independently" sufficient to support his conviction because the jury "determined, through separate interrogatories, that [Petitioner] was guilty of a single count of felon in possession by possessing *both* the firearm and the ammunition." *George*, 95 F.4th at 211. In tandem with that conclusion, the Fourth Circuit held that evidence regarding other passengers in the Tahoe (and, therefore, who may have possessed the firearm) "was not relevant to the ammunition possession" and accordingly immaterial to Petitioner's conviction. *Id.* Each claim in the Petition concerns evidence related to other passengers in the vehicle and the firearm. *See* DE 121 at 4-23. No claim addresses the evidence that Petitioner was encountered by law enforcement sitting on a firearm magazine. *See generally id.* Thus, the law of the case doctrine compels dismissal of the Petition because the Fourth Circuit has previously held that subject matter of Petitioner's claims is not material to Petitioner's conviction. *George*, 95 F.4th at 211; *Aramony*, 166 F.3d at 661.

## IV. Conclusion

Petitioner has failed to state a claim upon which habeas relief may be granted. Accordingly, the court GRANTS the United States' Motion to Dismiss [DE 126] and DENIES

Petitioner's Section 2255 Petition [DE 121]. The court further finds that reasonable jurists would not find the court's treatment of any of Petitioner's claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. *See Buck v. Davis*, 580 U.S. 100, 122 (2017); *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). The court therefore denies a certificate of appealability.

SO ORDERED this 3d day of April, 2025.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE